### Arthur Freeman v. The State.

#### No. 2664. Decided February 18, 1903.

#### Motion for Rehearing Decided March 26, 1903.

**1.—Perjury—Evidence.**

On a trial for perjury, assigned upon defendant's testimony in the criminal case of one B. for assault to murder, to the effect that he did not pick up the piece of newspaper introduced in evidence in the yard where the assaulted party was shot immediately after the shooting, it was admissible to prove by defendant's attorney that, prior to putting him on the stand as a witness in B.'s case, he had talked to him about what his evidence would be. The testimony was admissible to show that defendant's false statement assigned as perjury was not made through inadvertence or under agitation, or by mistake. Following Washington v. State, 22 Texas Crim. App., 26.

#### ON REHEARING.

**2.—Misconduct of Juror—Objection to.**

Where a juror, on his voir dire examination had stated that he had no opinion as to the guilt or innocence of the parties involved in the trial and was not present at their former trials, but subsequently, after certain evidence had been introduced, stated to the court that he had heard some of the evidence on the former trials, and may have sat as a juryman on one of the former trials. Whereupon counsel for defendant excepted to the conduct of the juror and stated "defendant would not acquiesce in the conduct of said juror." Held, this was not tantamount to a request that the court would withdraw the case from the jury, nor was it an objection to proceeding with the trial; and defendant, having failed to take such action, can not be heard to complain.

**3.—Bill of Exceptions to Exclusion of Testimony.**

A bill of exceptions to the exclusion of testimony is insufficient which does not show the object and purpose of its proposed introduction.

**4.—Perjury—Evidence.**

On a trial for perjury assigned upon alleged false testimony in a criminal case for assault to murder, the facts and circumstances attendant upon the assault to murder case, connecting the defendant· in that case with the assault, were necessary facts admissible in evidence on the trial of defendant for perjury.

**5.—Same—Indictment.**

An objection to an indictment for perjury, that it was assigned upon two statements made by defendant as a witness in a criminal case and that it omitted the letter "s" from the word statement, is hypercritical.

**6.—Same—Evidence Sufficient.**

See opinion for evidence stated, held sufficient to support a conviction of perjury.

Appeal from the District Court of Erath. Tried below before Hon. W. J. Oxford.

Appeal from a conviction of perjury; penalty two years imprisonment in the penitentiary.

This is the second appeal in this case. See Freeman v. State, 43 Texas Crim. Rep., 580. No additional statement to the one in that case, and the facts stated in the opinion in this case, is required.

*J. B. Keith* and *J. T. Daniel,* for appellant.

*Lee Riddle,* District Attorney, and *Howard Martin,* Assistant Attorney-General, for the State

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of perjury, and his punishment assessed at confinement in the penitentiary for a term of two years.

The State relied upon the alleged false statements made by appellant on the trial of Dock Baines for assault with intent to murder Minnie Freeman, in this: that he swore he did not pick up a portion of a certain newspaper called the "Ram's Horn," in the yard where Minnie Freeman was shot, immediately subsequent to the shooting of Minnie Freeman. The shooting occurred at night. It is not necessary to further state the evidence upon which the perjury was assigned. Arthur Freeman was used as a witness in the defense of Dock Baines.

J. B. Keith, Esq., who was one of Baines' counsel, on this trial was permitted to testify that the purpose of himself and counsel in using appellant as a witness in behalf of Dock Baines was to prove by him that the piece of paper picked up by him in the yard of J. C. Freeman, the night Minnie was shot was not torn in the same way as the one introduced in evidence, and that it was not the same piece of paper. Exception was reserved to this testimony because it was the conclusion and opinion of the witness and because the reason actuating counsel for Baines placing appellant on the stand in Baines' behalf could not bind defendant; and, whatever may have been their object or purpose, it in no way bound appellant, or could be admissible against him; and he

could not be made to suffer for the acts, purpose, and intent of Baines' counsel in placing him on the stand. The bill of exceptions is qualified as follows: "That the witness testified further that, prior to putting Freeman on the stand in the Baines case, he talked to him about what his evidence would be."

"The reason and purpose, as well as the admissibility, of evidence is, we think, apparent. Our code declares that a false statement, made through inadvertence, or under agitation or by mistake, is not perjury. Now if, from the information derived previously from the witness, the attorney was induced to call him upon the stand to swear to the facts to which he did testify, it stands to reason that such statements, when thus sworn to, could not have been made through inadvertence, nor have been the result of agitation or mistake." Washington v. State, 22 Texas Crim. App., 26. Under this authority the action of the court was correct in admitting the testimony.

We believe the charge of the court as given sufficiently presented the issues arising under the testimony, and therefore there was no error in refusing the requested instructions. There being no error in the record, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

DAVIDSON, Presiding Judge.—The judgment was affirmed at a previous day of the term, and is now before us on motion for rehearing. Appellant complains of that portion of the original opinion which briefly stated the substance of the false statement upon which the perjury was based. Critically speaking, the statement is not sufficiently full, and to satisfy the criticism we will state the matter thus: The false statement, as found in the indictment, is as follows: "That is to say, that the piece of paper then shown to him, said Arthur Freeman, by the district attorney, while he, Arthur Freeman, was on the stand testifying, was not the same piece of paper picked up by the said Arthur Freeman in the yard of J. C. Freeman on the night of the shooting of Minnie Freeman, and that there was not on the piece that he picked up the words, 'The Modern Dance,' in large printed letters; which said statement so made by the said Arthur Freeman was then and there material to the issue in said cause." And then follows the allegation of the falsity of the statement. On the trial of Baines appellant was used as a witness, and testified to the fact that he picked up a piece of the newspaper in the yard where the shooting occurred which resulted in wounding Minnie Freeman, but the piece of paper he picked up was not the same piece introduced on the trial of Baines for the assault upon Minnie Freeman. The issue before the jury was whether or not appellant committed perjury in swearing that the piece of paper introduced in evidence was not the piece of paper he picked up on the night of the shooting. The State took the affirmative, and

appellant defended against that proposition. We trust this is a sufficient statement to satisfy the criticism in the motion for new hearing.

Appellant insists that the court erred in not considering his fourth assignment of error, which is set out in his third bill of exceptions in regard to the juror Woodward. Woodward was present as juror, and was questioned in the usual manner on his voir dire, and stated he had formed no opinion as to the guilt or innocence of Dock Baines. He then further answered that he had formed no conclusion as to the guilt or innocence of appellant. He was further asked whether he was present at either of the former trials of Dock Baines, McCoy, or Freeman, to which the juror replied that he was not, "and knew nothing of the case." He further stated, if taken as a juror he could give defendant a fair and impartial trial under the law and evidence. He was taken as a juror. "That thereafter, when the State had introduced the paper wad and most of the evidence it relied on for a conviction, the said Woodward went to the court privately, and told the court that he had seen the said paper introduced in evidence on one of the former trials, and that he had heard at least some of the evidence introduced by the State in one of the former trials, and perhaps had sat upon one of the juries in one of the cases that had been previously tried; he did not know. Thereupon the court announced to defendant and his counsel the statement said juror made to the court, and defendant, through his counsel, Nugent, excepted to the conduct of said juror, and the defendant would not acquiesce in the conduct of said juror at all. Thereafter the court continued in this cause, and tried defendant with said Woodward as one of the jury that tried defendant; and that said jury, with said Woodward as one of same, returned into court subsequently a verdict of guilty. * * * That all of the above proceedings were had in the presence and hearing of the jury. That when the said juror Woodward returned to his place in the jury box, he stood up and told the court that he had an opinion now as to the guilt or innocence of defendant Baines, but that same would not influence his action in finding a verdict in this case. To which action of the juror Woodward, and the action and ruling of the court in continuing the trial, defendant then and there in open court excepted for the reasons above stated, and tenders this, his bill of exceptions." This is approved by the court without comment or qualification. This was not noticed in the original opinion because we thought then, and still, as presented there was nothing of which appellant could complain. The only complaint set out in the bill is that Counsel Nugent stated to the court "that defendant would not acquiesce in said conduct of said juror." What conduct is not mentioned. As shown by the bill, these matters occurred after the State had introduced the paper wad and most of the evidence relied on for the conviction. It seems that the juror had overlooked or forgotten, and is still uncertain as to his relation to the proceedings in any of the former cases, and was in that condition at the time he made known his attitude as to the guilt or innocence of Baines. Under the circum-

stances detailed, when the attitude of the juror was made known, ap-
pellant could have objected to proceeding with the trial on account of
the condition and attitude of the juror if he was not satisfied; or he
could have proceeded with the trial as he did. The simple statement
by one of the counsel that he "did not acquiesce in the conduct of the
juror" is not tantamount to a request that the court withdraw the
case from the jury, nor is it an objection to proceeding with the trial.
Where matters of this sort are presented during the trial, and where
rights are involved, parties must act on such emergencies as they arise.
The court was not authorized to withdraw the case from the jury, be-
cause this juror had been selected by appellant; and, having been se-
lected by him, the responsibility was with him, under the emergencies,
as to whether he would proceed with the trial when the condition of
the juror was made known to him. Had he presented a motion to with-
draw the case from the jury, we would have had a very different question
had the court refused it. As before stated, we thought in the investi-
gation of this question there was nothing of which appellant could com-
plain, and still so think; and, but for the urgency of the motion for
rehearing, the matter would not now be discussed.

Appellant complains that this court erred in not considering his
fourth bill of exceptions; at least in not mentioning it in the original
opinion. This bill recites: "That while the witness J. C. Freeman
was testifying for defendant, and after stating that he had been before
the grand jury while they were investigating the case against Dock
Baines for shooting his daughter, Minnie, one night at the supper table
he asked defendant, Arthur, to mark off on the picture in the Ram's
Horn, which they had there, just how he remembered the way the gun
wadding he picked up in Freeman's yard the night Minnie was shot
was torn; and that Arthur took a fork or knife at the table after supper,.
and marked off how he remembered the way the wad was torn, and
that he marked it off just the way he had testified that it was torn all
the time. Counsel for defendant then asked witness to state the rea-
sons why he asked Arthur to mark off the way the wad was torn, and
why Arthur marked off the way the wad was torn at said time. To this
question and the answer elicited thereby counsel for the State objected,
and the court sustained the objection, to which action of the court de-
fendant excepted. That said witness would have testified, if permitted
to do so by the court, that he had been before the grand jury, and that
the wad was not shown to him, and that he had heard that the wad
picked up in the yard was lost, and could not be found, and that for
these reasons Arthur marked off the way said wad was torn which he
picked up in the yard the night Minnie was shot, and gave same to Joe
Gordon; and defendant here and now tenders his bill." A most casual
inspection of this bill will show that it is too indefinite and uncertain
to be considered. Why this testimony was offered, the object and pur-
pose to be attained by introducing it, is not stated in the bill, and we
do not see why the reasons of the witness for asking Arthur to mark off

the way the wadding was torn, etc., could be legitimate evidence. They were not trying to prove any act, but simply the reasons of the witness for asking defendant to mark off the way the wad was torn. He had already proven the fact, and, without the bill making it appear that the reasons of the witness for stating the fact was of some legal or legitimate force in the trial, these reasons are totally irrelevant and inadmissible.

It is complained also that the court did not consider and pass upon the tenth assignment of error, "because it is shown by the evidence taken on said motion that the jurors who tried this cause considered the testimony in the Dock Baines case for the purpose of determining the weight to be given to other evidence as shown by the evidence taken on the trial of said motion." If it is meant by this that the jurors considered the facts and circumstances attending the assault of Baines upon Minnie Freeman, and the facts and circumstances which were introduced to connect him with the shooting of Minnie Freeman, then the jurors were correct in considering it, because the facts and circumstances which incriminated Baines were necessary facts upon the trial of appellant for perjury. The piece of paper introduced in evidence upon the trial of Dock Baines was one of the cogent circumstances to connect Baines with the shooting, because the paper picked up in the yard corresponded exactly with the newspaper found at Baines' residence, and when fitted into the torn place in the newspaper found in Baines' residence corresponded exactly, even to the wording and the pictures. Appellant's testimony in regard to this piece of paper was to the effect that it was not the same piece of paper that he (appellant) picked up in his father's yard the night his sister was shot, and which he states he gave to the witness Joe Gordon. The testimony for the State traced this paper from appellant's hands, and identified it until it was introduced in evidence before the jury in the Baines case. It would have been almost impossible for the State to have made out its case without this testimony. Some facts were introduced on the trial of Baines as a means of connecting him with the assault upon Minnie Freeman, and it was necessary to connect Baines with that shooting, and appellant was placed upon the stand in behalf of defendant to meet the State's case on Baines' trial. Of course, there was evidence introduced to identify the Baines trial, upon which appellant is alleged to have committed perjury. However, the court properly restricted this in his charge to the jury as to its office and mission in the record. We have been unable to see any merit in this contention of appellant.

It is also contended the court did not discuss in the original opinion the motion to quash the indictment, in that "the indictment charges two separate and distinct statements made by defendant, on either of which statements an assignment of perjury could have been based." This question was raised on motion in arrest of judgment. The only proposition under the eleventh assignment of error is the following: "The indictment in this cause does not charge any offense against the laws of

the State of Texas, and is subject to the criticism made in defendant's motion to quash the same." The motion in arrest was based upon the statement: "There are two separate and distinct statements alleged in said indictment, to wit, that the witness testified that the piece of paper picked up by him was not the same piece of paper shown him by the district attorney, and that the words, 'The Modern Dance,' in large printed letters, were not on the piece of paper which he, the said Arthur Freeman, picked up on that night; and it is not alleged in said indictment which of said statements are untrue; and neither is it alleged that both of said statements are untrue and false." In this particular connection the indictment uses this language: "And which said statement so made by the said Arthur Freeman as a witness in said case in the manner and form as aforesaid was deliberately and willfully made, and was deliberately and willfully false." Whether or not the language imputed to the witness on the trial of Baines can be made the basis of two assignments of perjury is wholly immaterial so far as this point is concerned. Had the language of the indictment, "And in which said statement so made by the said Arthur Freeman as a witness," etc., read, "And in which said statements so made by the said Arthur Freeman as a witness," etc., we are led to believe appellant would have thought the indictment sufficient. In other words, the omission of the letter "s" from the word "statement," making it singular instead of plural, is the fatal defect of which he now complains. We hardly thought that worthy of serious consideration. We were of opinion then, and still, that the indictment is sufficient, and the objection is hypercritical.

The remaining criticism of the opinion was that it failed to pass upon the assignment of error that the evidence was not sufficient to support the conviction. Baines was on trial for the shooting of Minnie Freeman, and one of the most important, if not the most important, facts connected with it centered in and around the piece of paper picked up in the yard where the shooting occurred. This piece of paper had been used as a wadding for the gun which fired the shot, and was picked up by appellant and turned over to Gordon. The circumstances pointed out Baines as the assaulting party. It was done at night, and the State had to rely upon circumstantial evidence. Tracks were traced towards Baines' residence, and shown to have corresponded with the shoes Baines wore. A newspaper at Baines' residence was found, called the "Ram's Horn." From this newspaper a piece had been torn, and this piece of paper was found at the place of the assault, and the piece picked up by appellant. It was fitted into the Ram's Horn found at Baines' house, and corresponded exactly, even to the most minute particular. The words on one piece were fitted to the other, and corresponded with and were complements of the other. Even a picture in it was made complete by fitting in the piece of paper picked up in the yard. This, then, was one of the most important circumstances in the whole trial of Baines. Appellant was placed on the stand for the purpose of showing

that the piece of paper they fitted into the Ram's Horn at Baines' house was not the piece of paper he picked up in the yard, and so testified. The piece was identified beyond any question. Appellant contends that he was honest in his belief that it was not the same, and sought to so impress the jury. Baines was his brother-in-law. All the circumstances were shown and portrayed before the jury. If appellant was swearing falsely, it is a clear case of perjury, and on a most material question. This issue as to his honesty of purpose, his belief in the truth of his statement, etc., were submitted to the jury, and by them decided adversely to him. We believe the testimony is sufficient to support the conviction.

The motion for rehearing is overruled.

*Overruled.*